2023 IL App (3d) 220089

Opinion filed August 14, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee and Cross-Appellant, | ) ) | |
| v. | ) ) | |
| | ) | Appeal No. 3-22-0089 |
| CARL SRACHTA, GEORGIA KAEMPF, VIRGINIA DIGIACOMO, KATHY PERRY,  CHERYL MOORE, BEVERLY GLEN HOMEOWNERS' ASSOCIATION, TERESA JAGIELLO, and KATARYNZA JAGIELLO, | ) ) ) ) ) ) ) | Circuit No. 21-MR-227


Honorable Paul M. Fullerton, Judge, Presiding. |
| Defendants | ) ) | |
| (Carl Srachta, Georgia Kaempf, Virginia, DiGiacomo, Kathy Perry, Cheryl Moore, and Beverly Glen Homeowners' Association, Defendants-Appellants and Cross-Appellees). | ) ) ) ) ) ) | |

_____

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justice Albrecht concurred in the judgment and opinion.

_____

**OPINION**

¶ 1       Plaintiff, Nationwide Mutual Insurance Company (Nationwide), brought a declaratory

judgment action against insureds, Beverly Glen Homeowners' Association (Association) and

members of the board of directors Carl Srachta, Kathy Perry, Georgia Kaempf, Virginia DiGiacomo, and Cheryl Moore (directors or board), asking the court to declare that Nationwide had no duty to defend or indemnify defendants against claims made by Association residents in a derivative suit. The trial court granted Nationwide's motion for judgment on the pleadings, finding that *res judicata* and collateral estoppel barred defendants from seeking a defense in the derivative suit where judgment rendered in a prior case determined that Nationwide had no duty to defend. Defendants filed a motion to reconsider and, in response, Nationwide filed a request for sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), which the court denied.

¶ 2     Defendants appeal, claiming that the circuit court erred in granting judgment on the pleadings in Nationwide's favor. Nationwide cross-appeals, arguing that the court erred by denying its request for sanctions in response to defendants' ill-grounded motion to reconsider. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     This lawsuit arises out of an ongoing dispute between defendants and Teresa and Katarzyna Jagiello, two Association residents.In December 2017, Nationwide issued a businessowners' policy to the Association. The policy was effective to December 11, 2018, and was renewed annually until it lapsed in December 2020. Among other provisions, it contained a liability coverage form, which was endorsed with a "Directors and Officers Liability" endorsement. The endorsement provided, in part:

> "1. INSURING AGREEMENT
>
>> We will pay those sums up to the applicable Limit of Insurance that the 'insured', as defined in this endorsement, becomes legally obligated to pay as damages for any 'claims' made arising out of a 'wrongful act' committed during

2

the Coverage Period shown in the Schedule of this endorsement and to which this insurance applies. A 'claim' seeking damages will be deemed to have been made when notice of such 'claim' is received and recorded by an 'insured' or by us, whichever comes first during the Coverage Period shown in the schedule of this endorsement.

* * *

We will have the right and duty to defend an 'insured' against a 'suit' seeking those damages for a 'claim' for which there is coverage under DIRECTORS AND OFFICERS LIABILITY.

HOWEVER,

* * *

b.We will have no duty to defend the 'insured' against any 'suit' seeking damages for 'wrongful acts' to which this insurance does not apply.

c.We may, at our sole discretion, investigate any 'wrongful acts' and settle any 'claim' or 'suit' that may result."

In addition, part IV of the "Premier Businessowners Liability Coverage" (Liability Coverage) policy, stated:

"IV. LIABILITY CONDITIONS

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

* * *

2. Duties In The Event Of Occurrence, Offense, Claim or Suit

3

* * *

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit';

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the 'suit';

d. No insured will, expect at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent."

¶ 5    Beginning in 2014, the Association and the Jagiellos engaged in multiple disputes. In July 2017, the Jagiellos filed a small claims complaint (No. 17-SR-1066) alleging breach of the Common Interest Community Association Act (Association Act) (765 ILCS 160/1-1 *et seq.* (West 2016)), breach of the Association's declaration of covenants, and constructive fraud based on uncontrolled flooding in the garage of their unit. After determining that Katarzyna was not entitled to judgment because she was not a unit owner, the trial court ruled in favor of Teresa on count I and found that she was entitled to reasonable attorney fees and costs under the Association Act. It also entered judgment in favor of Teresa on count III as it related to foundation repair on the garage and awarded her $4700 for those costs. The trial court dismissed count II. Nationwide defended the suit at the trial level with a reservation of rights but refused to appeal.

¶ 6        Defendant appealed the trial court's judgment without Nationwide's assistance. The reviewing court affirmed the circuit court's order as to counts I and II but reversed on count III and vacated the corresponding damage award. See *Jagiello v. Beverly Glen Homeowners' Ass'n*, 2019 IL App (2d) 180621-U.

¶ 7        In August 2018, the Association filed a complaint against the Jagiellos (No. 18-MR-1123). In response, the Jagiellos filed a seven-count counterclaim against the Association and directors Carl Srachta, Kathleen Perry, and Ina Aponte, alleging that they refused to comply with a letter, dated August 24, 2018, requesting Association documents and board minutes pursuant to section 1-30(i)(1) of the Association Act (765 ILCS 160/1-30(i)(1)(i)-(iii) (West 2018)). Count I of the counterclaim alleged that the Association violated the Association Act by failing to fulfill the Jagiellos' request. Counts II, III, and IV claimed that named board members, in his or her capacity as a director, had access to the Association Act documents and refused to disclose them. Counts V, VI, and VII are not relevant to this appeal.

¶ 8        The Association and the directors, as counterdefendants, tendered defense of the counterclaim to Nationwide on April 5, 2019. On June 24, 2019, Nationwide informed the counterdefendants that it had retained counsel to defend their interests and that it agreed to do so without any reservation of rights to deny defense or indemnity, up to the policy limits of $1 million.

¶ 9        Subsequently, attorney Kenneth DucDuong contacted Nationwide on behalf of the Association and the individual directors and stated that he believed Nationwide could not appoint the same counsel to represent the Association and the members of the board because the Association had a conflict with one of its directors. Nationwide then offered to appoint two separate attorneys, one to defend the Association and the "non-conflicted" directors, Srachta and

Perry, and another to represent the "conflicted" director, Aponte. The Association declined Nationwide's offer.

¶ 10    On October 15, 2019, Nationwide was allowed to intervene in the Jagiellos' counterclaim (No. 18-MR-1123) and filed a claim for declaratory relief against the Association. The trial court held a partial settlement conference on November 8 and December 6, 2019. Attorney DucDuong participated on behalf of the Association. Attorney Catherine Weiler participated as Nationwide counsel on behalf of the non-conflicted directors, Srachta and Perry.

¶ 11    As a result of the conference, the parties partially resolved the counterclaim and entered a settlement agreement. On December 6, 2019, in response to the terms of the settlement agreement, the court entered the following order:

"Counts I, II, III and IV of [the Jagiellos'] Counterclaim are dismissed pursuant to the following settlement agreement terms:

1) The Jagiellos will dismiss Counts I, II, III, and IV of the counterclaim with prejudice pursuant to settlement, as stated on the record[;]

2) Ina Aponte will pay $1,500 to the Jagiellos to resolve the matter[;]

3) The Association has agreed to produce documents identified in the August 24, 2018[,] [l]etter for all dates between January 1, 2017[,] and December 6, 2019[;]

4) By agreement of the parties, the document inspection will take place on December 19, 2019, at 1:00 p.m., at or near the office of Kenneth DucDuong;

5) Both the record request and the August 24, 2018[,] letter are attached and incorporated into this order;

6) The transcript of the hearing is also incorporated into this order."

¶ 12    Thereafter, Attorney Weiler attempted to direct the defense and resolution of the Association Act issues on behalf of directors Srachta and Perry. However, Attorney DucDuong continued to participate in the resolution of those claims. In addition, the directors continued to question Weiler's representation and direct how Nationwide funds should be used to settle the outstanding claims. As a result, Nationwide moved for summary judgment, claiming that it had no duty to defend the directors or the Association because they breached the cooperation clause in section IV of the liability coverage policy.

¶ 13    On April 14, 2020, the trial court granted Nationwide's motion. Specifically, the court ruled:

> "Nationwide's Motion for Summary Judgment is GRANTED for those reasons set forth in Nationwide's motion and reply briefs. There are no material issues of fact in dispute and it is clear, as a matter of law, that the lack of cooperation on the part of the insured and its counsel has relieved Nationwide of its duties under its policy to control the defense of the [Jagiellos'] counterclaim. Nationwide's insured failed to cooperate with Nationwide, relieving Nationwide of its duties under the policy, and Nationwide owes nothing to its insured for any legal services rendered by attorney DucDong [*sic*]. As such, Nationwide owes neither a duty to defend nor indemnify its insured in this matter."

The trial court entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016). No appeal was taken from the summary judgment order.

¶ 14        On October 15, 2020, the Jagiellos sought leave to file a derivative suit and/or an amended complaint in case No. 18-MR-1123. Both requests were denied.[1] On December 31, 2020, the Jagiellos filed a separate derivative suit in the circuit court (No. 20-L-1507) against directors Carl Srachta, Kathy Perry, Georgia Kaempf, Virginia DiGiacomo, and Cheryl Moore. The complaint claimed that the board breached its fiduciary duty by (1) refusing Nationwide's defense and violating Nationwide's cooperation clause without just cause ("fuel[ing] a personal vendetta"), (2) refusing to cooperate with their document request under the Association Act, (3) misappropriating funds, and (4) engaging in self-dealings. Kaempf notified Nationwide of the derivative action and requested a defense from Nationwide. The Jagiellos' derivative suit was eventually dismissed on January 27, 2022.

¶ 15        On March 9, 2021, almost 10 months before the derivative suit was dismissed, Nationwide filed a separate declaratory judgment complaint that is the subject of this appeal. In its complaint, Nationwide sought a declaration that it owed no duty to defend or indemnify the Association and the board in the Jagiellos' derivative suit (No. 20-L-1507). Count I alleged that a declaration in Nationwide's favor was warranted because the summary judgment order in case No. 18-MR-1123 operated as *res judicata* and/or collateral estoppel. Count II claimed that Nationwide had no duty to defend or indemnify the Association and the directors because they failed to cooperate with Nationwide in its efforts to defend and settle case No. 18-MR-1123 and therefore breached the cooperation provision of the policy. Nationwide alleged that the Association and the board actively deterred the settlement reached in case No. 18-MR-1123 from being completed and that their failure to cooperate led to the filing of the derivative suit.

---

[1]The Jagiellos' remaining counts that were not dismissed per the settlement (counts V through VII) survived and are still pending before the trial court.

8

Nationwide claimed that by failing to cooperate in case No. 18-MR-1123, the Association and the board voided coverage under the policy. Count III pleaded, in the alternative, that Nationwide had no duty to defend or indemnify based on several exclusions in the policy that negated any potential coverage.

¶ 16　　　　Nationwide moved for judgment on the pleadings. See 735 ILCS 5/2-615(e) (West 2020). On November 12, 2021, following extensive briefing and argument by the parties, the trial court determined that Nationwide was entitled judgment on the pleadings as follows: (1) on count I, under the doctrines of *res judicata* and collateral estoppel; and (2) on count II, for violation of Nationwide's cooperation clause. In particular, the court ruled that defendants were barred from seeking a defense in the derivative suit based on the April 14, 2020, ruling entered in case No. 18-MR-1123 that defendants' breach the cooperation clause in the liability coverage policy. The court declined to award judgment on count III, finding that the policy exclusions did not apply and that, regardless, count III was rendered moot by its ruling on the first two counts.

¶ 17　　　　Defendants filed a motion to reconsider, in which they revealed that they had filed an Attorney Registration and Disciplinary Commission (ARDC) inquiry against Attorney Weiler and attached her ARDC response letter to the inquiry as an exhibit. In response, Nationwide moved to strike the letter and asked for Rule 137 sanctions for costs and fees related to the motion. Nationwide argued that attaching the letter was a clear violation of Illinois Supreme Court Rule 766 (eff. June 14, 2006), which states that ARDC proceedings are intended to be confidential.

¶ 18　　　　Following a hearing on February 9, 2022, the trial court denied defendants' motion to reconsider, finding that there was no new evidence that was not available at the time of the initial ruling. The court also granted Nationwide's motion to strike Attorney Weiler's ARDC response

9

letter and denied its request for sanctions. The court found that counsel's actions did not rise to the level of Rule 137 sanctions but noted:

> "I would say that attaching that exhibit, which did not really provide any support for the motion, was not professional.
>
> I think, Mr. DucDuong, you are using your personal animosity toward [Nationwide counsel] to make legal or purported legal arguments on behalf of your clients is [*sic*] not appropriate."

¶ 19    Defendants appealed. Nationwide responded and filed a cross-appeal.

¶ 20                                   II. ANALYSIS

¶ 21                            1. Ripeness and Mootness

¶ 22    Initially, defendants claim that we should reverse the trial court's order and remand with directions to dismiss Nationwide's complaint with prejudice because the complaint sought a declaration of no duty to indemnify and was filed before judgment was entered in the Jagiellos' derivative suit, making it unripe.

¶ 23    The Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2022)) provides for the issuance of declaratory judgment regarding the interpretation of disputed terms of a contract. See *id.* § 2-701. "The court may, in cases of actual controversy, make binding declarations of rights, *** including the determination, at the instance of anyone interested in the controversy, of the construction of any *** contract or other written instrument, and a declaration of the rights of the parties interested." *Id.* It is well settled that declaratory relief is available where a case presents "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977).

10

¶ 24    An insurer taking the position that a claim against its insured is not covered by the policy has the right to seek a declaratory judgment that there is no coverage. *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 373 (1999). A declaratory judgment action brought to determine an insurer's duty to defend is ripe upon the filing of a complaint against the insured. *Metzger v. Country Mutual Insurance Co.*, 2013 IL App (2d) 120133, ¶ 18; see *Weber v. St. Paul Fire & Marine Insurance Co.*, 251 Ill. App. 3d 371, 373 (1993) ("issue of a duty to defend is generally ripe for adjudication soon after the occurrence giving rise to the claim").

¶ 25    Here, Nationwide filed a declaratory judgment complaint seeking a declaration that it owed no duty *to defend* or indemnify. Regarding the duty to defend, there is no dispute that the determination of Nationwide's duty is ripe for declaratory judgment based on the derivative suit and Kaempf's request to defend. Thus, defendants' ripeness argument fails.

¶ 26    In the alternative, defendants claim Nationwide's declaratory judgment complaint is now moot based on the January 27, 2022, circuit court order dismissing the Jagiellos' derivative suit in case No. 20-L-1507. We find defendants' mootness argument equally unavailing.

¶ 27    Illinois courts' jurisdiction extends only to cases that present an actual controversy. *McCormick v. Robertson*, 2015 IL 118230, ¶ 21. "Events occurring during the pendency of litigation which 'dissipate' the controversy on which the litigation was founded may render the case moot." *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 131 Ill. App, 3d 376, 378 (1985). "A case on appeal becomes moot where the issues presented in the trial court no longer exist because events subsequent to the filing of the appeal render it impossible for the reviewing court to grant the complaining party effectual relief." *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 8.

¶ 28    Defendants claim that with the dismissal of the Jagiellos' underlying derivative complaint in the January 27, 2022, order, Nationwide's declaratory judgment complaint is now moot. To

11

resolve this argument, we take judicial notice of the January 27, 2022, order entered in the derivative suit.[2] In that order, the court made the following rulings:

> "Plaintiff's [Teresa Jagiello's] Motion to Disqualify Defense Counsel is granted for the reasons stated on the record.
>
> Defendants' [directors] Motion to Disqualify Lead Plaintiff and Plaintiff's counsel is granted for the reasons stated on the record.
>
> The Complaint is hereby dismissed without prejudice with Plaintiff given the ability to replead and file an Amended Complaint with a new Lead Plaintiff and new counsel by 3/18/22.
>
> If no new Complaint and no new counsel appearance is filed by 3/18/22, the case will be dismissed for want of prosecution on 3/21/22."

¶ 29   The court's January 27, 2022, order makes clear that Nationwide's declaratory judgment complaint is not moot. The court dismissed the Jagiellos' derivative complaint *without prejudice* and contained a self-executing dismissal for want of prosecution on March 21, 2022, if a new plaintiff and new counsel failed to appear by March 18, 2022. Defendant argues that the Jagiellos' failure to appeal that order disposes of their derivative suit completely. However, defendants overlook section 13-217 of the Code, which gives plaintiffs at least one year from the dismissal for want of prosecution to refile, regardless of any appeal. See 735 ILCS 5/13-217 (West 2022) ("plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such judgment is reversed or entered against the plaintiff"); see also *Jackson v. Hooker*, 397 Ill. App. 3d 614, 618 (2010). Accordingly, we reject

---

[2]On July 7, 2023, this court entered a minute order granting defendants' motion to reconsider the denial of the motion to take judicial notice of the order entered on January 27, 2022.

defendants' claim that the declaratory judgment action is moot based on the January 27, 2022, order in case No. 20-L-1507.

¶ 30                                    B. *Res Judicata* and Collateral Estoppel

¶ 31        On the merits, defendants claim that the circuit court erred in granting judgment in Nationwide's favor on the basis of *res judicata* and collateral estoppel.

¶ 32        Defendants claim that *res judicata* and collateral estoppel do not apply in this case because the April 14, 2020, order in case No. 18-MR-1123 made no findings of fact and conclusions of law as to directors Kaempf, DiGiacomo, and Moore named in the Jagiellos' derivative suit (No. 20-L-1507). They also claim that *res judicata* should not apply because new facts arose after the April 14, 2020, order was entered. Whether *res judicata* and collateral estoppel bar claims are questions of law, subject to *de novo* review. *Lelis v. Board of Trustees of the Cicero Police Pension Fund*, 2013 IL App (1st) 121985, ¶ 13.

¶ 33        The doctrine of *res judicata* serves to bar actions in which (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies in both actions. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). *Res judicata* prevents the relitigation of issues that could have been decided in the first action along with those issues that were actually decided. *Id.*

¶ 34        Likewise, the doctrine of collateral estoppel prevents the relitigation of issues resolved in earlier causes of action. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). The elements for collateral estoppel are similar to those for *res judicata*. The moving party must demonstrate that (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question, (2) there was a final judgment on the merits

in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *In re Owens*, 125 Ill. 2d 390, 399-400 (1988).

¶ 35      Defendants claim that, while the final judgment requirement has been met, the doctrines of *res judicata* and collateral estoppel do not bar them from enforcing Nationwide's duty to defend and indemnify because (1) three of the directors named in the derivative suit were not named in the prior counterclaim and are not in privity with a party to the prior adjudication and (2) an identity of the cause of action does not exist. We disagree as to both.

¶ 36      First, we find that that defendants are in privity with the counterdefendants named in the prior counterclaim. Privity exists when parties adequately represent the same legal interests, irrespective of their nominal identities. *Oshana v. FCL Builders, Inc.*, 2013 IL App (1st) 120851, ¶ 23 (citing *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992)). "A nonparty may be bound pursuant to privity if his interests are so closely aligned to those of a party that the party is the 'virtual representative' of the nonparty." *City of Chicago v. St. John's United Church of Christ*, 404 Ill. App. 3d 505, 513 (2010). While there is not one prevailing definition of privity utilized in all cases, Illinois courts have generally applied the principles set forth in the Restatement (Second) of Judgments to determine privity. *Direct Auto Insurance Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 63.

¶ 37      Under the Restatement, privity may fall into one of three categories: (1) representative, such as trustee or executor; (2) "substantive legal relationship" in which one of the parties to the relationship may bind the other to a judgment; and (3) "successor in interest to property." *Id.* ¶ 64; Restatement (Second) of Judgments § 75, cmt. a, at 210 (1982). The second category includes an "array of substantive legal relationships" in which one of the parties to the relationship is "treated as having the capacity to bind the other to a judgment in an action to

14

which the latter is not a party." Restatement (Second) of Judgments § 75, cmt. a, at 210 (1982). These relationships include assignees and assignors, corporations and their officers, directors, and shareholders, and members of partnerships. See Restatement (Second) of Judgments §§ 45 to 61 (1982). Corporations act through their officers and directors in a legal relationship and are bound by the directors' actions when performed within the scope of their authority. *Ahlgren v. Blue Goose Supermarket, Inc.*, 266 Ill. App. 3d 154, 162 (1994).

¶ 38    Here, the Association and directors Srachta and Perry were named as counterdefendants in the initial counterclaim filed by the Jagiellos (No. 18-MR-1123). Thus, they are the same parties for purposes of *res judicata* and collateral estoppel. As to directors Kaempf, Giacomo, and Moore, the answer is not as clear and requires the application of the principles of privity and corporate law.

¶ 39    In their derivative suit (No. 20-L-1507), the Jagiellos asserted claims against the Association and directors Srachta, Perry, Kaempf, DiGiacomo, and Moore. Although some of the directors named in the derivative complaint were not named in the initial counterclaim action, the Jagiellos named the Association, along with two of the five directors, in both the counterclaim and the derivative suit. It therefore appears the parties named in the counterclaim were sufficiently representative of the additional defendant included in the subsequent derivative suit. Moreover, in both the counterclaim and the derivative suit, the board members were named in their capacity as directors of the Association. The directors act as the arms of the Association and for all intents and purposes are one and the same. See *id.* In other words, there exists a legal relationship in which the directors, acting within their corporate authority, bind the Association. And in both actions, the Jagiellos alleged that the directors, acting on behalf of the Association, refused to produce the Association Act documents and refused to cooperate with Nationwide

15

counsel, establishing a substantive legal relationship between the directors and the Association, the corporate entity named in both suits. We therefore find the privity requirement of *res judicata* and collateral estoppel has been met.

¶ 40 Second, the two cases constitute the same cause of action. Our supreme court has adopted the "transactional" test for determining whether two cases constitute the "same cause of action" for purposes of *res judicata*. See *River Park*, 184 Ill. 2d at 310-12 (adopting Restatement (Second) of Judgments § 24 (1982)). The transactional test provides that the assertion of different kinds or theories of relief still constitute a single cause of action if a single group of operative facts give rise to the assertion of relief. *Id.* at 307. Further the transactional test permits claims to be considered part of the same cause of action even if there is not substantial overlap of evidence needed to sustain the second lawsuit that would have sustained the first, so long as the claims arise from the same transaction. *Id.* at 311. As section 24 of the Restatement (Second) of Judgments provides:

> "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim ***, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24 (1982).

¶ 41 In this case, the claims at issue in the counterclaim (No. 18 MR 1123) and the derivative suit (No. 20-L-1507) evolved out of a series of connected transactions. In case No. 18-MR-1123, the Jagiellos claimed that the Association and named directors refused to comply with their request for documents and board minutes pursuant to section 1-30(i)(1) of the Association Act (765 ILCS 5/1-30(i)(1)(i)-(iii) (West 2018)). In the derivative suit, the Jagiellos again claimed

16

that the Association and the board refused to comply with sections 1-30(i)(1)(i) through 1-30(i)(1)(iii) of the Association Act and that the board members breached their fiduciary duty by encouraging the Association's continued refusal after settlement, which resulted in Nationwide declining to provide fidelity insurance coverage. All of these claims arise from the same nucleus of operative facts involving the Jagiellos' request for documents and defendants' subsequent response. Accordingly, the trial court did not err in applying *res judicata* and collateral estoppel and declaring that Nationwide had no duty to defend defendants in the derivative suit.

¶ 42 Defendants argue that *res judicata* should not apply because after the April 14, 2020, order was entered in case No. 18-MR-1123, new facts arose, specifically: (1) Nationwide placed undisclosed liability restrictions on attorney Weiler post-settlement, and (2) director Aponte failed to cooperate with the defendants named in the counterclaim action. Assuming, *arguendo*, these facts are well-grounded, they relate to the defendants' refusal to comply with the Jagiellos' request for documents under the Association Act. Thus, they are connected to the transaction or series of connected transactions out of which the original counterclaim arose. Therefore, the doctrines of *res judicata* and collateral estoppel still apply. See *National Tea Co. v. Confection Specialties, Inc.*, 48 Ill. App. 3d 650, 653-54 (1977) (breach of contract action for failure to maintain insurance barred by *res judicata* effect of prior judgment in personal injury and indemnity case).

¶ 43 Last, defendants argue that even if all the requirements for *res judicata* are met, the doctrine should not apply "offensively" under the facts and circumstances of this case. We disagree.

¶ 44 *Res judicata* is an equitable doctrine that should be applied "only as fairness and justice require." *McHenry Savings Bank v. Moy*, 2021 IL App (2d) 200099, ¶ 38. "It is intended to be

17

used as a shield, not a sword." *Id.* Here, Nationwide is asserting the doctrine in a declaratory judgment action to obtain a no-duty-to-defend ruling. It is, contrary to defendants' argument, attempting to use the doctrine as a shield in the underlying derivative suit. Further, under the circumstances, applying the doctrine to deny defendants coverage in the derivative suit would not be unfair or unjust. Defendants have refused to produce documents, ignored settlement agreements and court orders requiring them to do so, and failed to cooperate with Nationwide counsel in defending their actions. In continuing to dispute the Jagiellos' claims, it should come as no surprise to defendants that Nationwide would have no duty to defend or indemnify their actions.

¶ 45    Having determined that the trial court properly awarded judgment on the pleadings based on count I of Nationwide's declaratory judgment complaint, we need not consider whether judgment was appropriate under counts II and III. The trial court's order granting judgment in Nationwide's favor as to count I of the complaint is affirmed.

¶ 46                                    C. Sanctions

¶ 47    On cross-appeal, Nationwide claims that the trial court erred in denying its motion for Rule 137 sanctions against the Association and Attorney DucDuong and asks this court to remand to the trial court for the presentation of a fee petition. Nationwide maintains that sanctions were appropriate because defendant's motion to reconsider, which included Attorney Weiler's ARDC letter, was based on false and confidential information.

¶ 48    The purpose of a motion to reconsider is to bring to the trial court's attention a change in the law, an error in the trial court's previous application of existing law, or newly discovered evidence that was not available at the time of the prior hearing or decision. *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 34. Illinois Supreme Court Rule 137 (eff. Jan.

18

1, 2018) allows a court to sanction a party or attorney who has filed a pleading that is either not well-grounded in fact or law or that is interposed for an improper purpose. *Enbridge Pipeline (Illinois), LLC, v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 48. The purpose of Rule 137 is to prevent abuse of the judicial process by sanctioning parties who file vexatious and harassing actions based on unsupported allegations of fact or law. *Clark v. Gannett Co.*, 2018 IL App (1st) 172041, ¶ 66. It is intended to prevent the filing of false and frivolous pleadings, as opposed to penalizing litigants just because they were unsuccessful. *Id.* Consequently, the party seeking sanctions bears the burden of proof to show that the other party made untrue and false allegations without reasonable cause. *Id.* Whether to grant sanctions under Rule 137 is within the trial court's discretion. *Enbridge Pipeline*, 2019 IL App (4th) 150544-B, ¶ 49. A court abuses its discretion where no reasonable person would agree with its decision. *Id.*

¶ 49        Here, Nationwide moved for sanctions pursuant to Rule 137 for fees and costs incurred in responding to defendants' motion to reconsider the November 12, 2021, order granting judgment on the pleadings. Defendants' motion alleged, in part, that Attorney Weiler had a conflict of interest in that she was more likely to protect the insurer rather than the insured and, because of that conflict, defendants received substandard and inadequate representation. Counsel then claimed that "under these facts, the application of *res judicata* and collateral estoppel offensively bind the director defendants who were unnamed and unalleged in 18 MR 1123 is contrary to the established law of the District, and this Court's ruling on November 12, 2021, should be reversed." The motion then continued to make the same arguments based on *res judicata* and collateral estoppel that defendants made in their response to Nationwide's motion for judgment on the pleadings.Although defendants' motion did not contain any newly discovered evidence, it did allege that the trial court erred in its previous application of existing law. As discussed, the

19

issue of whether *res judicata* and collateral estoppel apply in this case is not easily determined. Although we concluded that the doctrines apply, defendants' motion to reconsider asking the court to review its prior ruling was not frivolous.

¶ 50 Moreover, Nationwide claims that sanctions are appropriate because the motion was based on unsubstantiated accusations against Attorney Weiler. But Nationwide failed to show that defendants made untrue or false allegations related to the specific legal issue the trial court was asked to reconsider. While the attachment of the ARDC letter may have been irrelevant and improper, as the trial court duly noted, we cannot say that the trial court's refusal to imposed sanctions for fees and costs associated with the motion to reconsider was an abuse of discretion.

¶ 51                                    III. CONCLUSION

¶ 52        The judgment of the circuit court of Du Page County is affirmed.

¶ 53        Affirmed.

*Nationwide Mutual Insurance Co. v. Srachta*, 2023 IL App (3d) 220089

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 21-MR-227; the Hon. Paul M. Fullerton, Judge, presiding. |
| **Attorneys for Appellant:** | Kenneth M. DucDuong, of KMD Law Office, Ltd., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Peter G. Syregelas, of Lindsay, Pickett & Postel, LLC, of Chicago, for appellee. |