2025 IL App (1st) 241189-U

SECOND DIVISION
March 18, 2025

No. 1-24-1189

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF STELLA OKERE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | 18 D 630164 |
| | ) | |
| KEVIN OKERE, | ) | The Honorable |
| | ) | Bonita Coleman, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed; the trial court did not abuse its discretion in imposing a fine on respondent and their attorney pursuant to the court's inherent authority to impose sanctions for failure to comply with the court's orders in order to control its docket and to prevent undue delay caused by abuses of procedural rules after vacating a finding of indirect civil contempt.

¶ 2    Petitioner, Stella Okere, filed a petition of dissolution of marriage against respondent, Kevin Okere. On April 21, 2021, the trial court entered a judgment of dissolution of marriage. Years later, petitioner filed a petition for rule to show cause why respondent should not be held in indirect civil contempt for respondent's alleged "deliberate and unjustified failure to abide by the terms of the judgment for dissolution." During proceedings on the petition, respondent and respondent's attorney failed to appear at hearings in person as ordered by the court. Initially, the trial court found respondent and respondent's attorney in indirect civil contempt for their failure

to appear in person and imposed a fine. On a motion to reconsider, the trial court vacated the finding of indirect civil contempt and imposed a fine in the same amount pursuant to the trial court's inherent authority to control its docket and prevent undue delay. For the following reasons, we affirm.

¶ 3                                BACKGROUND

¶ 4     We limit our summation of the facts from this lengthy litigation to only those matters relevant to the issue in this appeal. On February 22, 2018, petitioner, Stella Okere, filed a petition of dissolution of marriage against respondent, Kevin Okere. On April 21, 2021, the trial court entered a judgment of dissolution of marriage. As it pertains to this appeal, the judgment found that the parties have an interest in real estate in Calumet City, Illinois that was purchased during the marriage. The judgment ordered the real estate "sold and the proceeds *** shared equally," with an additional amount to petitioner representing the dollar amount respondent withdrew from the equity in the real estate.

¶ 5     On November 2, 2023, petitioner filed a petition for rule to show cause why respondent should not be held in indirect civil contempt for respondent's alleged "deliberate and unjustified failure to abide by the terms of the judgment for dissolution." The petition alleged that respondent had failed to cooperate in the sale of the real estate (the parties' former marital home) preventing the real estate from being listed for sale, and that respondent's unwillingness was willful, contumacious, and without just cause.

¶ 6     On December 18, 2023, the trial court entered a written order, the matter coming before the court on petitioner's "motion to set [petitioner's] petition for rule to show cause for hearing." The December 18 order set the petition for hearing on February 14, 2024. The order contains the

following language: "Both parties with their respective realtors will be present in person for the hearing and not on ZOOM. [Respondent's attorney] shall appear."

¶ 7    On February 14, respondent and respondent's attorney appeared in person. Petitioner requested a continuance due to the death of petitioner's attorney. The trial court entered a written order that the real estate shall be listed and sold by a real estate agent named in the order; that, "Parties shall cooperate. Failure to cooperate in an expeditious and efficient manner shall result in a hearing instanter on the entry of a rule and finding of contempt;" and continuing the petition "for status" on March 13, 2024, and that, "All future court dates in this matter shall be in person unless otherwise ordered."

¶ 8    On March 13, 2024, at 9:05 a.m., prior to the time set for the status hearing (11:00 a.m.), respondent's attorney emailed the trial judge's coordinator. The email stated as follows: "I woke up this morning not feeling well. I am waiting for a call back from my doctor's office. I will not be appearing either in person or via Zoom for the Status hearing today. Please advise the Court and let us know the hearing date, preferably on a Wednesday or a Friday for [petitioner's] Petition for Rule to Show Cause." The trial court entered a written order on March 13 continuing the matter to May 7, 2024, at 9:30 a.m., for a status report on "Petitioner's petition for rule IN PERSON/sale of marital residence." The March 13 order also stated, "Petitioner's petition for rule is entered and continued. Respondent and his attorney shall be present IN PERSON at all future court dates, failure to do so may result in a rule will enter and hearing on contempt shall be held instanter."

¶ 9    On May 6, 2024, the day before the scheduled status hearing, respondent's attorney again emailed the trial judge's coordinator. The May 6 email expressed concern about the March 13,

2024, order, given that respondent's attorney contacted the trial judge's coordinator before the hearing. The email then reads, in part, as follows:

> "For the May 7, 2024, status hearing, I have a doctor's appointment at 8:00 a.m. and so will not be appearing. Plus, the property has been sold and closed on April 19, 2024. [Petitioner] received her share of the proceeds per your Judgment for Dissolution of Married [*sic*] entered on April 21, 2021. There is nothing else for [petitioner] to do regarding the property \*\*\*. [Petitioner] and the Court Appointed Realtor \*\*\* can testify to that. If Petitioner still wants to proceed with the Rule to Show Cause, we would prefer a Wednesday or a Friday hearing date. [Petitioner] has a new attorney now and is included in this email."

¶ 10 Respondent nor respondent's attorney appeared on May 7, 2024. On May 7 the trial court entered a written order finding that on December 18, 2023, and March 13, 2024, the court directed respondent and respondent's attorney (each identified in separate orders as the contemnor) to appear in court in person on all future court dates and that as of May 7, 2024, the contemnors had failed to appear in court in person on May 7 and on March 13, 2024. The order, which is a form "Order of Adjudication of Indirect Civil Contempt and/or Order of Commitment" (contempt order) includes the following preprinted language:

> "4. The contemnor has not given any legally sufficient reasons for failure to comply with said order, even though s/he had, and still has, the means to comply with said order, and that contemnor's failure to comply with said order is willful and contumacious;

5. The conduct of the contemnor has defeated and impaired the rights and interests of the Petitioner/Respondent and has further impeded and obstructed the Court in its administration of justice."

¶ 11    The May 7, 2024, contempt order adjudged the contemnors in indirect civil contempt for willful failure to obey the trial court's orders and ordered the contemnor's committed to the Cook County Jail, "there to remain until s/he shall have purged him/herself of contempt by paying a fine of $2,000.00 to the Clerk of the Court on or before May 16, 2024." The order stayed commitment and continued the matter until May 17, 2024.

¶ 12    On May 9, 2024, respondent and respondent's attorney filed a motion to vacate the trial court's May 7, 2024, contempt order; and on May 13, 2024, filed a motion to reconsider the May 7 order.[1] The trial court set the motion to reconsider for hearing on May 17, 2024. On May 17, 2024, the trial court continued the motion to reconsider the adjudication of indirect civil contempt for hearing on May 28, 2024. Also on May 17, 2024, the trial court entered an order issuing a rule against respondent to show cause why respondent should not be held in contempt for failure to cooperate in the sale of the property as ordered by the court on April 21, 2021. The court ordered respondent to appear on July 10, 2024.

¶ 13    On May 29, 2024, the trial court entered a "Corrected Order" stating that, following hearing on the motion to reconsider the adjudication of indirect civil contempt, the court's findings and orders "are set forth in the attached document entitled, 'Okere Ruling Notes on

---

[1]    On June 3, 2024, respondent filed an "Amended Motion to Reconsider" which, per the amended motion, was "solely for the purpose of adding Exhibits K through R to the motion and made a part of the record having relied on the exhibits at the hearing of the Motion to Reconsider on May 28, 2024." The exhibits are respondent's attorney's "After Visit Summary" of respondent's attorney's doctor's appointments between September 1, 2023, and May 17, 2024. We will consider these exhibits to the extent, if any, they inform our decision.

Motion for Reconsideration of Adjudication of Indirect Civil Contempt Finding' " (written findings) and further ordering as follows:

"1. The finding of Indirect Civil Contempt is vacated;

2. Pursuant to the Court's Inherent Power, [respondent and respondent's attorney] shall pay $2,000.00 to the Clerk of the Circuit Court for failing to appear in person as ordered on March 13, 2024 and May 7, 2024, $1,000.00 for each day missed.

3. Said payment shall be made on or before June 5, 2024."

¶ 14    The written findings provide a history of this litigation and some of respondent's and respondent's attorney's conduct during the litigation. The trial court stated, regarding respondent's conduct, "Some people may consider this gamesmanship. However, this Court finds it lacking in integrity and a disrespect for the judicial process." The court continued with some of the history of the litigation, including concerning the sale of the real estate, before stating, "In light of the actions and inactions of [respondent] and his Attorneys, the failure to follow Court orders [(other than appearing in person),] the lack of integrity possessed by [respondent] and [respondent's attorney,] and disrespect shown for the judicial process, this Court ordered all proceedings to be held in person going forward." The court then recited the specific orders and failures to appear, including respondent's attorney's emails, discussed above. The court then wrote, in pertinent part, as follows:

"Consequently, this Court held a hearing of indirect civil contempt in [respondent and respondent's attorney's] absence. A finding of indirect civil contempt was entered and a fine of $1000 for each day missed was entered against [respondent and respondent's attorney,] a total of 2,000 for each one.

This Court's intention of entering said fines is not punitive. It is intended to coerce [respondent and respondent's attorney] to comply with court orders.

The purpose of reciting the history of this case is to demonstrate and show a clear picture of how [respondent] and [respondent's] attorneys refuse to comply with court orders and conduct themselves with dignity by respecting rules of the judicial process. Their actions thus far show a complete and utter disrespect for honesty, rules and the integrity of the judicial process. IT MUST STOP GOING FORWARD.

This Court's finding of indirect civil contempt and a fine leaves room for argument that the fine is a sanction for past wrongdoing, irrespective of the Court's intention to be of coercive measures. I can see how one may interpret this Court's actions as such. In order to alleviate such an argument and make clear of this Court's intention, the contempt finding is vacated.

Instead, this Court utilizes its inherent power to prevent undue delays in the disposition of cases caused by abuses of procedural rules and control its docket to fine [respondent and respondent's attorney] for their failure to appear in this Court as ordered on March 13 and May 7, 2024 $2,000 each ($1,000.00 each day) for the days missed as a coercive measure for future court dates and compliance with court orders going forward."

¶ 15 Respondent and respondent's attorney filed their Notice of Appeal on June 3, 2024, and on June 4, 2024, they filed a motion to stay the trial court's May 29, 2024, order. On June 14, 2024, the trial court denied the motion to stay. The order denying the motion to stay noted that a different attorney represented respondent as it related to the proceeding but neither that attorney

or respondent appeared at the hearing on the motion to stay, and respondent's attorney from the underlying proceedings represented themselves and did appear. The order denying the motion to stay found that respondent "continues to be in noncompliance with the Court's orders to appear in person when this matter is before the Court" and that judicial economy or the administration of justice is not served by granting a stay of the enforcement of the court's ruling. On June 26, 2024, respondent and respondent's attorney filed in this court a motion to stay the trial court's order pending appeal. On July 9, 2024, we denied that motion.

¶ 16    On July 10, 2024, the trial court entered an order following a status hearing on petitioner's petition for rule to show cause. The July 10 order finds that the fine had not been paid "in spite of this Court's and the Appellate Court's denial of motions to stay the enforcement of the requirement to pay said fine" and ordered that the petition for rule is continued for status, that respondents shall pay the fine, and that failure to pay the fine "shall result in issuance of a rule to show cause and hearing on contempt instanter." On July 15, 2024, respondent and respondent's attorney (hereinafter, collectively, respondents) paid their fines.

¶ 17    This appeal followed.

¶ 18                                ANALYSIS

¶ 19    This is an appeal of an order imposing a fine as a sanction on a party and their attorney pursuant to the trial court's inherent authority to control its docket and prevent undue delay. The trial court has inherent authority, independent of any statute or rule, to (i) control its docket and (ii) prevent undue delays in the disposition of cases caused by abuses of procedural rules, by imposing sanctions for violations of court orders. *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 65-66 (1995) (citing *Bejda v. SGL Industries, Inc.*, 82 Ill. 2d 322, 328 (1980)), *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007) ("the trial court possesses the inherent authority to control its own

docket and the course of litigation, including the authority to prevent undue delays in the disposition of cases caused by abuses of the litigation process."), *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶ 65. "Reversal of a trial court's decision to impose a particular sanction is only justified when the record establishes a clear abuse of discretion." *Sander*, 166 Ill. 2d at 67. "The predicate to such deference is that the sanction decision is factually and legally informed and reasoned." *Cirrincione v. Westminster Gardens Limited Partnership*, 352 Ill. App. 3d 755, 761 (2004). In this instance "[a] court abuses its discretion where no reasonable person would agree with its decision" (*Nationwide Mutual Insurance Co. v. Srachta*, 2023 IL App (3d) 220089, ¶ 48), or "when the court's ruling is arbitrary or exceeds the bounds of reason" (*State Farm Mutual Automobile Insurance Co. v. Trujillo*, 2018 IL App (1st) 172927, ¶ 21).

¶ 20    Respondents argue that their conduct did not indicate any "intentional undue delay in the disposition of the case, no abuse of procedural rules, and no intentional interference with the trial court's ability to control its docket." Respondents argue that those facts, "combined with the trial court's own decision to vacate the very order of contempt that gave rise to the fines, show a clear abuse of discretion in still imposing said fines." Although the trial court vacated its finding of contempt and this is an appeal of a sanction pursuant to the court's inherent authority, a brief discussion of the trial court's contempt power is appropriate to better understand respondents' argument on appeal.

¶ 21    "Indirect civil contempt occurs when, outside the presence of the trial court, a party fails to follow the orders of the trial court, resulting in the opposing party's loss of a benefit or advantage." *Sinkus v. BTE Consulting*, 2017 IL App (1st) 152135, ¶ 29. "Generally, criminal contempt consists of acts tending to lessen the dignity or impede the process of the court." *Falcon, Ltd. v. Corr's Natural Beverages, Inc.*, 173 Ill. App. 3d 291, 297 (1988). "Criminal

contempt is conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute. [Citations.] The contemnor's conduct must be willful ***."
*D'Agostino v. Lynch*, 382 Ill. App. 3d 960, 968 (2008).

¶ 22    This court recently summarized contempt charges.

"There are four main types of contempt: direct civil contempt, direct criminal contempt, indirect civil contempt, and indirect criminal contempt. *** Civil contempt is designed to compel future compliance with a court order and can be avoided through compliance alone. [T]he civil contemnor must hold[ ] in his own pocket the key to his jail cell, so that he may win his release at any time by complying with the order of the court. Contempt based on past actions which cannot be undone means that the contemnor lacks the ability to purge the contempt because the purpose of civil contempt is to compel compliance with court orders, not to punish. Therefore, whenever a court order cannot be complied with, there cannot be a finding of civil contempt.

Criminal contempt is instituted to punish, as opposed to coerce, *** for past contumacious conduct. *** In short, criminal contempt consists of punishing for doing what has been prohibited or not doing what has been ordered, while civil contempt is invoked to coerce what has been ordered, and once the contemnor complies, no further civil sanctions are imposed. In sum, the attributes of civil contempt are that (1) the contemnor is able to perform the action demanded by the court and (2) no further civil sanctions are imposed if the contemnor complies. ***.

- 10 -

Direct and indirect contempt are distinguished based upon where the contemptuous conduct occurred. A direct contempt charge is brought when the alleged contemptuous conduct occurs in the direct presence of a judge, whereas an indirect contempt charge is brought when the alleged contemptuous conduct occurs outside the direct presence of a judge. *** [W]here all the facts necessary to prove a contempt charge are known by the judge, direct contempt is the proper characterization. *** Direct contempt, regardless of whether it is criminal or civil in nature, may generally be dealt with in a summary fashion—without the formality of pleadings, notice, or hearing—because the offending conduct was witnessed by the court itself. On the other hand, a person charged with indirect criminal contempt is generally entitled to all of the constitutional protections and procedural rights afforded to other criminal defendants ***." (Internal quotation marks and citations omitted.) *In re A.C.*, 2024 IL App (1st) 232052, ¶¶ 18-20.

¶ 23 In the motion to reconsider in the trial court, respondents argued the finding of contempt was inappropriate because respondents' conduct was not willful and, regardless, did not result in obstructing the court in the administration of justice or any loss of a benefit to the petitioner. Respondents also argued that, "Based on the stated reasons in the Court's May 7, 2024 orders, the contempt hearings were held based on [respondents'] *** past conduct. [Respondents] can do [nothing] to cure the past conduct, and the sanctions themselves do not cure the past conduct either." Respondents argued, in pertinent part to this appeal, that "the contempt proceedings and accompanying orders were criminal in nature and not civil." In support of the argument that the

sanction was criminal in nature respondents argued that the sanctions were punitive in that the "penalties [are] for past conduct and not in any way designed to coerce future compliance."[2]

¶ 24    It is true that the trial court's contempt order found that respondents "failed to appear in Court in person on today [(May 7, 2024)] and March 13, 2024," and that respondents could not cure that contempt by appearing at the March 13 or May 7, 2024, hearings. Despite the fact the order also states that the trial court had ordered respondents "to appear in court in person on *all* future court dates" (emphasis added) and that proceedings in the case had not concluded, the inclusion of the specific past dates in the contempt order explain the trial court's statement in its written findings on the motion to reconsider that the contempt order "leaves room for argument that the fine is a sanction for past wrong doing." In vacating the finding of contempt and sanctioning respondents pursuant to the trial court's inherent authority, the trial court expressed its intention to sanction respondents "as a coercive measure for future court dates and compliance with court orders going forward."

¶ 25    On appeal, respondents argue the sanctions imposed pursuant to the contempt order were a "punishment" because respondent's attorney informed the trial court that the reason for respondent's attorney's absence at the hearings was "personal matters regarding her health." Respondents argue that despite providing that explanation, the trial court, "based ostensibly on the history of the case in general[,] found the advisements lacking and found [respondents] in indirect civil contempt." Respondents also argue, in reference to the contempt finding, that

---

[2]    Respondents also argued that the contempt was indirect because "the alleged noncompliance occurred outside of Court; as such, the Court would have no personal knowledge enough to find that the alleged noncompliance is direct;" and that because the finding was actually indirect criminal contempt, "the Court has erred in not affording [respondents] the rights afforded to defendants in criminal cases ***." Respondents do not revive these arguments on appeal and they are not relevant to our disposition, so we have no need to address them.

respondents' "failure to attend all future court dates in person in compliance with [the court's] December 18, 2023 and March 13, 2024 orders was not willful and contumacious," and even if it were, "the failure did not defeat the rights and interests of [petitioner or] impede[] the Court's administration of justice" or ability to rule in petitioner's favor. Now on appeal from the order imposing sanctions, not pursuant to a finding of contempt but pursuant to the trial court's inherent authority to control its docket and prevent undue delay caused by violations of court orders, respondents argue that, "Once the contempt findings were vacated, the monetary sanctions accompanying them should have also been vacated." Respondents argue that reimposing the sanctions "tends to suggest that [the trial judge] still wished to punish [respondents] for failing to appear [for status hearings] while avoiding legal problems with the use of the court's contempt power." Further, respondents argue that, contrary to the trial court's written findings, "there is no where [*sic*] in the Record of 'past wrongdoing' or disobeying court order [*sic*] or failed to appear in person ***." Respondents argue that the trial court abused its discretion "after having vacated the contempt charges, there being no past wrong doing or anything else that [respondents] can do to hinder the enforcement of the Judgment for Dissolution of Marriage."

¶ 26    "[A] judgment is to be construed like other written instruments with the determinative factor being the intention of the court as gathered from all parts of the judgment itself." *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 605 (1999). As demonstrated above, the alleged "legal problem" with the use of the court's contempt power is based in respondents' argument that the sanctions for indirect civil contempt were improper, which, as the trial court found, left room for an argument that the sanction was solely for failing to appear on March 13 and May 7, 2024. We offer no express or implied opinion as to whether the contempt order was

actually a finding of direct or indirect criminal contempt rather than a finding of indirect civil contempt. The trial court vacated that order and it is no longer of any effect. See, *e.g*., *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 39 ("Section 2-1401 gives authority to the circuit court to grant relief from a judgment, *i.e.,* to vacate it and render it without legal effect."). We focus on the trial court's imposition of a sanction against respondents pursuant to the court's inherent authority—an authority respondents concede exists in the trial court.

¶ 27     "As a reviewing court, we must look to the factors which the trial court was to rely on in making its determination of an appropriate sanction in order to determine if the trial court has abused its discretion." *Ashford v. Ziemann*, 99 Ill. 2d 353, 369 (1984). In determining an appropriate sanction, the trial judge must weigh the competing interests involved. See *Sander*, 166 Ill. 2d at 68 (discussing sanction for failure to obey court order to amend pleadings and finding that, "In determining an appropriate sanction, the trial judge must weigh the competing interests of the parties' rights to maintain a lawsuit against the necessity to accomplish the objectives of discovery and promote the unimpeded flow of litigation."). The *Sander* court also found that,

> "The trial judge must consider the importance of maintaining the integrity of our court system. It is this integrity that equips the trial judge with the authority to protect competing interests. [Citation.] Where it becomes apparent that a party has willfully disregarded the authority of the court, and such disregard is likely to continue, the interests of that party in the lawsuit must bow to the interests of the opposing party." *Sander*, 166 Ill. 2d at 68-69.

¶ 28     In the written findings attached to the order denying respondents' motion to reconsider, the trial court wrote that, during the trial on the parties' petition for dissolution of marriage,

which was held via Zoom, the trial court "on multiple occasions had to admonish [respondent's attorney] to stop feeding [respondent] answers to questions by this Court, irrespective of this Court's admonishments, [and respondent] continued reading and providing responses given to him by his attorney during this court's inquiry." The court then detailed instances of failure to abide by the trial court's orders following the entry of the judgment for dissolution of marriage. Specifically, the court ordered respondent to post bond and turnover respondent's passports but respondent refused "and traveled to Nigeria on more than one occasion without permission or knowledge of the Court during the appeal process." After this court dismissed respondent's prior appeal, petitioner notified the court that respondent's attorney was "the designated broker on the sale of the parties' former marital residence." The trial court wrote that counsel refused to acknowledge the conflict of interest, forcing the court to appoint a realtor to sell the real estate. The court concluded that, "In light of the actions and inactions of [respondents,] the failure to follow Court orders, the lack of integrity possessed by [respondents,] and disrespect shown for the judicial process, this Court ordered all proceedings to be held in person going forward."

¶ 29   We conclude, as did the *Sander* court, that "the trial court did not abuse its discretion by imposing the sanction at issue in this case." Respondents have not refuted the facts contained in the trial court's findings. "It is well settled that a trial court's factual findings must be accepted on review unless found to be against the manifest weight of the evidence." *Skees v. Growmark, Inc.*, 158 Ill. App. 3d 842, 847 (1987). " 'It is no small burden to show that a circuit court's ruling *** is against the manifest weight of the evidence' [citation,]" and that burden lies with the appellant. *In re Marriage of Jessica F. & Justin H.*, 2024 IL App (4th) 231264, ¶ 48. Respondents have not argued that a fine is not an appropriate sanction under the trial court's inherent authority but, nonetheless, we find that it is appropriate. *Sander v. Dow Chemical Co.*,

252 Ill. App. 3d 403, 419 (1993), reversed on other grounds, *Sander*, 166 Ill. 2d 48 ("the court's inherent power provides a trial judge with ample authority under appropriate circumstances to impose sanctions such as the imposition of fines"), *Clymore v. Hayden*, 278 Ill. App. 3d 862, 870 (1996) ("courts should not hesitate, where appropriate, to sanction—with significant fines—those attorneys who disregard court orders and rules").

¶ 30     In this case we find that the sanction is not a punishment for failing to appear on March 13, 2024, and May 7, 2024, but is meant to "coerce compliance with court *** orders." *Sander*, 166 Ill. 2d at 68. We reject respondents' arguments that the sanction the trial court imposed in its ruling on respondents' motion to reconsider is nothing more than a punishment for failing to appear on March 13 and May 7, and that the trial court lacked any basis to sanction respondents to coerce future compliance with the trial court's orders because there is allegedly no history of noncompliance other than on the dates specified in the contempt order.

¶ 31     In its written findings denying respondents' motion to reconsider the trial court wrote:

"This Court's intention of entering said fines is not punitive. It is intended

to coerce [respondents] to comply with court orders.

The purpose of reciting the history of this case is to demonstrate and show

a clear picture of how [respondents] refuse to comply with court orders and

conduct themselves with dignity by respecting the rules of the judicial process."

¶ 32     Respondents have not demonstrated that the trial court's stated purpose was not its true intent. Respondents argue that they provided an explanation for their absence on two specific court dates and that their disobedience of the trial court's order on those dates was not willful and did not impede the administration of justice in this case. But respondents have provided no similar argument with regard to the numerous other instances of disobedience the trial court

noted in its written findings. Further, contrary to respondents' assertion on appeal, the trial court did list numerous instances of past wrongdoing that did impede the administration of justice in this case. In light of the history the trial court recited in its written findings, respondents' arguments that respondent's attorney "indicated good and valid reasons for [respondents'] failure to appear in court" on those two dates and "indicated no intentional undue delay in the disposition of the case, no abuse of procedural rules, and no intentional interference with the trial court's ability to control its docket" from respondents' failure to appear is not persuasive.

¶ 33    We also find that the trial court's written findings demonstrate the court's interest in having respondents appear in person to control its docket, prevent undue delay, and maintain the integrity of the court system by ensuring compliance with the court's orders. Respondents have not specifically identified a competing interest in generally not appearing in person (unforeseen circumstances notwithstanding), and we find that none exists. See Ill. S. Ct. R. 241 (eff. Feb. 2, 2023) (trial judge "*may*" allow testimony or nontestimonial participation by a party by telephone or video conference "for good cause shown and upon appropriate safeguards"). We find that the sanction is based on the trial court's findings that respondents have "willfully disregarded the authority of the court, and such disregard is likely to continue" and reasonably balances any competing interests in this case. *Sander*, 166 Ill. 2d at 68-69. The trial court provided a factual basis for the sanction and respondents have not offered any argument contradicting the trial court's written findings.

¶ 34    Based on the trial court's undisputed findings and its unchallenged authority to sanction respondents to control its docket and prevent undue delay caused by failure to comply with the court's orders, we find that the trial court's decision to sanction respondents is "factually and legally informed and reasoned." *Cirrincione*, 352 Ill. App. 3d at 761. We cannot say that "no

reasonable person would agree with its decision" (*Srachta*, 2023 IL App (3d) 220089, ¶ 48), or that "the court's ruling is arbitrary or exceeds the bounds of reason" (*Trujillo*, 2018 IL App (1st) 172927, ¶ 21). Therefore, we find the trial court did not abuse its discretion in imposing the fine as a sanction against respondents pursuant to the court's inherent authority.

¶ 35                                    CONCLUSION

¶ 36     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 37     Affirmed.